JACK VAN VALKENBURGH
VAN VALKENBURGH LAW, PLLC
405 South 8th Street, Suite 250
Boise, Idaho 83702
Telephone: 208-331-2100
Facsimile: 208-947-2424
Email: jvanvalkenburgh@gmail.com
Idaho State Bar # 3818

SAM JOHNSON
JOHNSON & MONTELEONE, L.L.P.
405 South 8th Street, Suite 250
Boise, Idaho 83702
Telephone: 208-331-2100
Facsimile: 208-947-2424
Email: sam@treasurevalleylawyers.com
Idaho State Bar # 4777

ATTORNEYS FOR PLAINTIFF

F I L E D
A.M. 1:05 P.M.

JUN 0 1 2011

CANYON COUNTY CLERK
J DRAKE, DEPUTY

IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT FOR THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF CANYON

| | |
|---|---|
| ANNA BANDA,<br>aka ANNA MARIE TOVAR<br><br>Plaintiff,<br><br>vs.<br><br>JOEY HOADLEY, in his individual capacity as an officer of the Caldwell Police Department, SCOTT CRUPPER, in his individual capacity as an officer of the Caldwell Police Department, and THE CITY OF CALDWELL, a municipal corporation, and JOHN DOES 1-10 in their individual capacities.<br><br>Defendants. | Case No. CV 11-5390<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

COMPLAINT AND DEMAND FOR JURY TRIAL – Page 1



**EXHIBIT 1**

COMES NOW Plaintiff, Anna Banda, by and through her attorneys of record, Jack Van Valkenburgh, of Van Valkenburgh Law, PLLC, and Sam Johnson, of Johnson & Monteleone, L.L.P., and states the following claims against Defendants.

## JURISDICTION

1. The matter is properly before the District Court pursuant to Idaho Code § 1-705. All compensatory damages due and owing to Plaintiff are believed to be in excess of the statutory Magistrate court's jurisdictional amount under Idaho Rule of Civil Procedure 82(c)(2)(A).

## PARTIES

2. The Plaintiff is a single adult citizen of the State of Idaho, residing in Caldwell, Idaho.

3. The Defendant, Joey Hoadley, at all times relevant herein, was employed as a police officer with Defendant City of Caldwell ("City") and the Caldwell Police Department ("Department"). Defendant Hoadley heads up the Caldwell Street Crimes Unit. He is being sued in his individual capacity.

4. The Defendant, Scott Crupper, at all times relevant herein, was employed as a police officer with Defendant City and the Caldwell Police Department. Defendant Crupper is being sued in his individual capacity.

5. The Defendant City of Caldwell is a municipal corporation and political subdivision of the State of Idaho, and employed Defendants John Does 1 through 10, including supervisory personnel, serving in their individual and official capacities.

## FACTUAL ALLEGATIONS

6. That on or about June 3, 2009, Defendant Scott Crupper of the Caldwell police swore out an application for a search warrant before Canyon County Magistrate Judge Southworth to conduct a search of Plaintiff's home, located at 303 W. Linden Street, Caldwell, Idaho.

7. That when asked by the Judge why he needed a search of that residence, Defendant Crupper stated that one of the people that has an arrest warrant was in the group of people that was discussed yesterday, is currently living at that address, Mario Flores. (The prior day the Judge issued search warrants on various homes in relation to a Caldwell Police Department investigation commonly referred to as "Operation Street Sweeper".)

8. That Defendant Crupper went on to explain that Mario Flores had been living at 1323 Helena, and that was the residence that was shot in the drive by shooting, and that Mario Flores had children so he had moved to 303 W. Linden. (The "drive by shooting" referred to here is the March 21, 2009 shooting by gang members of Mr. Flores' apartment, instigated because Mr. Flores was in the process of extricating himself from the gang.)

9. In his application for the search warrant, Defendant Crupper said nothing to indicate that he had seen Mr. Flores at 303 W. Linden in recent months or that he had any basis whatsoever to believe Mr. Flores lived there.

10. That when the Judge asked Defendant Crupper if Mr. Flores was present and participated at the meetings where increasing gang membership was discussed and the firearm was displayed, Defendant Crupper stated "yes." (The "meetings" referred to here include the March 21, 2009 meeting attended by a gang informant.)

COMPLAINT AND DEMAND FOR JURY TRIAL – Page 3

11. That based upon false information sworn to by Defendant Crupper, the Judge then found probable cause for the issuance of a search warrant for 303 W. Linden, Caldwell, and authorized a daytime or nighttime search.

12. That the search warrant for 303 W. Linden was one of those issued on June 2 and June 3, 2009 as part of "Operation Street Sweeper".

13. That 303 W. Linden, Caldwell is the home residence of its owner, Plaintiff Anna Banda, and that the only people living with Plaintiff at that time were her daughter, Daisy Garcia (then age 14), and her son, Mario Garcia, (then age 12).

14. That, upon information and belief, neither Defendant Crupper nor Defendant Hoadley honestly believed Mario Flores lived at 303 W. Linden.

15. That, upon information and belief, if somehow Defendant Crupper and Hoadley did believe Mario Flores was living at 303 W. Linden in Caldwell (Plaintiff's home) on June 3, 2009, such belief was fantastical, and was by no means objectively reasonable as will be demonstrated below.

16. That Plaintiff owns Anna's Bail Bonds, which she established in November 2007, and which at the time was the only bail bond company in Canyon County owned and operated by a Hispanic woman.

17. That unlike most Canyon County Deputy Sheriffs, members of the Caldwell Street Gang Unit have treated Plaintiff, and continue to treat Plaintiff, as if they believe she supports or is affiliated with gang activities, to wit:

    a. After the raid on her house, Plaintiff twice noticed Caldwell Police cars following her. She was upset enough by the repeated harassment to call police dispatch and complain about it.

COMPLAINT AND DEMAND FOR JURY TRIAL – Page 4

  b. In or around October, 2010, Plaintiff was approached by Defendant Hoadley and two other Caldwell police officers who attempted to serve a "Notice of Fugitive Status" regarding a gang member, Christopher Torres, despite the fact that Plaintiff didn't know Mr. Torres. Plaintiff voiced objection and – despite the fact that she feared being arrested if she did not sign – refused to sign the warrant.

  c. In August, 2010, when Plaintiff was working with a Caldwell prosecutor after reporting that she was a victim of phone harassment, Defendant Hoadley asked the prosecutor whether she was Caldwell City's prosecutor or Anna Banda's. Upon learning this fact, Plaintiff repeatedly called the Caldwell Police Chief to discuss the matter with him, but he never returned her calls regarding it.

 18. That Plaintiff in no way supports gang activity and has never been charged or arrested in relation to gang activity, but admits, as part of her bail bonding business, to treating people as people (i.e., with a modicum of respect) who are arrested and who need a bail bond.

 19. That Plaintiff also concedes that Mario Flores was her daughter's boyfriend at the time, and that Mr. Flores had been trying to extricate himself from a gang, but Plaintiff does not understand why Defendants would fabricate that she was housing Mario Flores at the time of the search.

 20. That on June 3, 2009, at approximately 5:30 p.m., Plaintiff was in her vehicle with her children Daisy and Mario, beginning to back out of her driveway in order to take her children to the YMCA.

 21. That at that time numerous police vehicles as well as other vehicles arrived at 303 W. Linden in connection with the search warrant for that location.

22. That Defendant Hoadley walked to Plaintiff's car window and asked her to step out, telling her that he had a search warrant for her home and reading her the warrant.

23. That at the time Plaintiff's daughter Daisy was standing next to Plaintiff and told Plaintiff that the officers were looking for Mario Flores, and further that Officer Hoadley was then holding a photograph of Mr. Flores with the search warrant for Plaintiff's home.

24. That Plaintiff then told Defendant Hoadley that if they were looking for Mario Flores he did not live with her.

25. That Defendant Hoadley then commanded Plaintiff to put her hands behind her back. Defendant Hoadley put Plaintiff in handcuffs and escorted her to her backyard, with her children following, while officers conducted a search of Plaintiff's home.

26. That Plaintiff was profoundly upset, at times crying, and was tremendously embarrassed to be publicly humiliated while in handcuffs before her children and before police officers she knew and representatives of Homeland Security, the Bureau of Alcohol Tobacco and Firearms, and Felony Probation and Parole. Plaintiff's embarrassment and humiliation were further exacerbated when she observed that photographs were being taken of her in handcuffs, in the presence of other officers.

27. That Plaintiff feared for the future of her family and her business.

28. That Plaintiff was detained in handcuffs for a substantial period of time, approximately 1 ½ hours, because police could not find evidence described in the search warrant.

COMPLAINT AND DEMAND FOR JURY TRIAL – Page 6

29. That Plaintiff's ex-husband, Mario Garcia, who was visiting Plaintiff at the time, was also detained in handcuffs by Defendant Hoadley for approximately 1 ½ hours.

30. That at the conclusion of the raid, Plaintiff asked Defendant Hoadley if she could see what items police had removed and if she could get a copy of the list of such items, and that Defendant Hoadley nodded his head "no" that she could not see what items police had removed.

31. That Defendant Hoadley told Plaintiff that she needed to get Mario Flores to Plaintiff's house and Defendant Hoadley said he would arrest Plaintiff's daughter, Ms. Garcia, for harboring a fugitive or for resisting and obstructing (Plaintiff doesn't remember which) if Ms. Garcia did not bring Mario Flores to Plaintiff's house.

32. That Plaintiff called her daughter Priscilla Garcia, learned that she was shopping with Mr. Flores, and ordered her to bring Mr. Flores to Plaintiff's home.

33. That Mr. Flores was arrested upon his arrival to Plaintiff's home.

34. That police had no reason to believe that Mario Flores was living at Plaintiff's house, to wit:

    a) On June 3, 2009, and for more than two months preceding that date (i.e., since March 21, 2009), Mario Flores and Priscilla Garcia were living with Mr. Flores' mother, Jessica, at her house;

    b) Certain Caldwell police officers during that time period were aware of the fact that Jessica Flores was very ill and that Mr. Flores and Priscilla Garcia were caring for Ms. Flores;

c) Plaintiff herself, together with Priscilla Garcia, during that same time period met with and told Caldwell officer Ed Silva that Mr. Flores and Ms. Garcia were living with Jessica Flores. At the time, Plaintiff and her daughter, Ms. Garcia, were seeking police support because, in response to recent and on-going telephone harassment of Priscilla Garcia by a gang member known as Cesar Chavez, Plaintiff wanted police to keep an eye on both Plaintiff's residence and where Ms. Garcia lived with Mario Flores and Mario's mother, Jessica.

d) That subsequent to the shooting of Mr. Flores' apartment on March 21, 2009, and up until the raid on Plaintiff's home on June 3, 2009, Plaintiff believes that Mr. Flores never visited nor stepped foot in Plaintiff's home.

e) That the last date that Mr. Flores had stayed overnight at Plaintiff's home was in 2006 when he was living there with Ms. Garcia, together with their infant daughter, and with Plaintiff, and with Plaintiff's two younger children.

f) That since 2006, Mr. Flores has always lived with his mother, Jessica, aside from approximately one month prior to March 21, 2009 when he and Priscilla Garcia lived in an apartment on Helena Street. Although Jessica Flores twice moved her residence between 2006 and November 2008, with each move Mario Flores moved with her.

g) That at some point during the 2 ½ months prior to June 3, 2009, Mr. Flores told a Caldwell Police Officer during a traffic stop that he was living at his mother's house.

h) That on or about June 1, 2009 (two days prior to the raid on Plaintiff's home) Plaintiff told Caldwell Officer Hemmert, in response to his question, that Mr. Flores did not live with her.

35. That despite the fact that Mario Flores was living at his mother's house for 2 ½ months prior to the June 3 raid, police did not search the home of Mr. Flores' mother as part of Operation Street Sweeper.

36. That prior to the June 3 raid, Plaintiff noticed a Caldwell police car parked on a street behind her home. She believed they were conducting surveillance of her home.

37. That immediately and for weeks after the raid, Plaintiff was left feeling confused and threatened and unsure as to what officers had taken from the search and whether Plaintiff would face criminal charges.

38. That several days after the raid Plaintiff called Defendant Hoadley to ask if she would have to face criminal charges in connection with the raid. Plaintiff could not reach Defendant Hoadley so she left a message for him to call her.

39. That on or about June 16, 2009, Defendant Hoadley returned Plaintiff's call. Plaintiff then asked Defendant Hoadley if she would face criminal charges in connection with the raid. Defendant Hoadley responded that if she kept bonding out gang members she might be charged with criminal association.

40. That after the raid, Plaintiff was afraid to post bail bonds.

41. That Plaintiff is a well-known person in Caldwell and the news that Plaintiff's house had been raided was widely known throughout the community.

42. That the raid caused Plaintiff's children to become depressed, confused and embarrassed, and that Plaintiff's children reported being frequently asked by friends and classmates that they heard that Plaintiff had been arrested.

43. That the raid caused Plaintiff's bonding business to suffer, because she could not feel comfortable or confident that conducting her business, specifically bonding arrestees, who might sometimes be gang members, would not cause her to face increased harassment or to lose her license to bail bond.

44. That Plaintiff reasonably anticipated – given that the government was obviously capable of getting a search warrant for her house based upon the false statement that Mario Flores lived with her, and given the harassment she had endured (and continues to endure) – that her license to be a bail bonding agency was in jeopardy.

45. That Plaintiff reasonably feared a complaint being filed with the Department of Insurance (who oversee bail bonds agents), the loss of her bonding license, and/or other forms of reprisal from Defendants should she continue her bonding business.

46. That Plaintiff ceased to speak to arrestees regarding her availability as a bonding agent, ceased to pursue potential bail bond clients for business, and suffered the resulting injuries described above.

47. That as a direct and proximate result of the June 3, 2009 search of Plaintiff's home, and as a direct and proximate result of the other above-described actions of Defendants, Plaintiff suffered significant economic loss, emotional pain, suffering and injury and was deprived of her constitutional rights as set forth below.

## FEDERAL CAUSES OF ACTION

48. Plaintiff incorporates the foregoing and following paragraphs of this Complaint into these claims.

### FOURTH AMENDMENT VIOLATION BY DEFENDANTS
### INVALID SEARCH WARRANT

49. The Plaintiff had a liberty interest, including without limitation, in being free from search of her home, seizure and detention without probable cause.

50. That Defendants did not honestly believe that Mario Flores was living at 303 W. Linden in Caldwell (Plaintiff's home) on June 3, 2009, and Defendant Crupper intentionally misspoke when he stated, for the purpose of obtaining a search warrant for that location, that Mr. Flores was then living at Plaintiff's home. As a result, the search warrant was invalid as constituting a search of Plaintiff's home and a seizure of her person without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

51. That, alternatively, the Defendants' belief that Mario Flores was living at 303 W. Linden in Caldwell on June 3, 2009 was not objectively reasonable and the resulting search warrant was invalid as constituting a search of Plaintiff's home and a seizure of her person without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

52. That as a direct result of the deprivation of these constitutional rights, Defendants are liable to Plaintiff for the damages set forth in this complaint.

### FOURTH AMENDMENT VIOLATION BY HOADLEY –
### DEPRIVATION OF LIBERTY

53. Defendant Hoadley, the head of the Caldwell Street Gangs Unit of the Caldwell Police Department, unreasonably, unnecessarily and unconstitutionally placed and held Plaintiff in handcuffs during the entire period of the June 3 search of Plaintiff's home, despite the fact that neither the search warrant nor the search warrant application identified Plaintiff as a suspect, despite the fact that no arrest warrant had been issued for Plaintiff, despite the fact that Plaintiff offered no resistance to officers nor indicated any inclination to flee, and despite the fact that Plaintiff's children were with her the entire time. Such behavior by Defendant Hoadley violated the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983. As a direct and proximate result of Defendant Hoadley's behavior, Plaintiff and her two youngest children suffered and liable for the resulting injuries as described above.

## FIRST AMENDMENT VIOLATION BY DEFENDANTS
## FREEDOM OF SPEECH

54. Defendants Hoadley and Crupper caused Plaintiff injuries by denying her right to free speech and association.

55. By their actions described above, Defendants Hoadley and Crupper and other Defendants caused Plaintiff to reasonably fear that she would lose her bail bonding business and/or would be criminally charged, should she continue to operate her bail bonding business.

56. That the actions of Defendants Hoadley and Crupper and other Defendants caused an intentional and unconstitutional chilling of her free speech and interfered with her freedom of association, causing economic damage, in violation of the First and Fourteenth Amendments to the United State Constitution and 42 U.S.C. section 1983.

57. That as a direct and proximate result of the deprivation of these constitutional rights, Defendants Hoadley and Crupper and other Defendants suffered and are liable to Plaintiff for the damages set forth in this Complaint.

## STATE CONSTITUTIONAL CLAIMS

58. Plaintiff incorporates the foregoing and following paragraphs into this claim.

59. That the search warrant of Plaintiff's home was invalid and the search of Plaintiff's home and detention of Plaintiff by Defendants was without probable cause and constituted a violation of Article 1, Sections 1, 13 and 17 of the Idaho Constitution.

60. That the actions of Defendants caused an intentional and unconstitutional chilling of her free speech and interfered with her freedom of association, causing economic damage, in violation of the Article I, Sections 9 of the Idaho Constitution.

61. That as a direct and proximate result of the deprivation of these constitutional rights, Defendants Hoadley and Crupper and other Defendants suffered and are liable to Plaintiff for the damages set forth in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1. For special damages as set out in the Complaint and in an amount to be proven at trial;

2. For general damages as set forth in the Complaint and in an amount to be proven at trial;

3. For nominal damages and a declaration that the civil rights of the Plaintiff have been violated by the Defendants;

4. For reasonable court costs and attorney fees pursuant to statute and rule; and

5. For such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Under I.R.C.P. 38, Plaintiff demands trial by jury on all issues, claims and defenses so triable under the Constitution of the United States and the applicable statutes.

DATED This 25th day of May, 2011.

VAN VALKENBURGH LAW, PLLC

_____
JACK VAN VALKENBURGH
Attorney for Plaintiff